IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | Criminal No.    1:23-CR-501 (MAD) |
| ) | |
| **v.** ) | Government's Sentencing Memorandum |
| ) | |
| **WILLIAM TAYLOR,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

The United States of America, by and through its counsel of record, the United States Attorney for the Northern District of New York, hereby files its sentencing memorandum requesting that the Court sentence the Defendant to a term of incarceration near the top end of the Guideline range of 61 to 70 months; a three-year-term of supervised release; a Guideline fine of $15,000 to $150,000; and a $200 special assessment. The Government respectfully submits that this sentence is sufficient, but not greater than necessary, to comply with the sentencing factors set forth in 18 U.S.C. §3553 where the Defendant participated in a scheme to defraud the New York State Department of Labor ("NYSDOL") of $892,771. The Government also asks the Court to order agreed-upon restitution in the amount of $381,815 to the State of New York and forfeiture in the amount of $315,723.

### I.   Introduction

On January 4, 2024, the Defendant pled guilty pursuant to a written plea agreement (ECF 4) ("Plea Agreement"), to both counts of a two-count-Information charging him with conspiring to commit mail and wire fraud, in violation of 18 U.S.C. §§1341, 1343, and 1349; and aggravated identity theft, in violation of 18 U.S.C. §1028A.

The government adopts the facts as set forth in the Presentence Investigation Report (ECF 15) (the "PSIR") prepared by the United States Probation Office, which in turn relied upon the

Plea Agreement and other materials. Specifically, the Defendant agreed with his girlfriend, Patricia Clarke,[1] to engage in a 16-month-long scheme to fraudulently obtain unemployment benefits in the names of at least seventeen unsuspecting individuals. PSIR at ¶3(d). The Defendant would text Clarke the names, dates of birth, and social security numbers of unemployment insurance claimants. PSIR ¶3(c). Based upon the repeated false assertions that the claims were being paid to and for the benefit of the claimants—rather than the conspirators—the NYSDOL paid $381,815 in benefits to accounts controlled by the conspirators, including into an account in the Defendant's name. PSIR ¶3(h).

The parties agree that the Defendant intended to cause $892,771 in loss to the NYSDOL. PSIR ¶4(b). The Defendant personally obtained $315,723. PSIR ¶3(j).

The Defendant is scheduled to be sentenced on September 20, 2024.

## II.     Applicable Statutory and Guidelines Provisions

### a.  Statutory Maximum and Minimum Penalties

*Maximum term of imprisonment (Count 1)*:  20 years pursuant to 18 U.S.C. §§1341, 1343, and 1349.

*Mandatory consecutive term of imprisonment (Count 2)*:  2 years, pursuant to 18 U.S.C. §1028A(a)(1)

*Maximum fine*: $250,000 pursuant to 18 U.S.C. § 3571(b)

*Maximum supervised release term*:  up to 3 years pursuant to 18 U.S.C. § 3583.

---

[1] *See United States v. Patricia Clarke*, 1:23-CR-502 (MAD). This memorandum refers to Taylor and Clarke collectively as "the conspirators."

b.  **Guidelines Provisions**

i.  **Offense Level**

The United States adopts Probation's calculation, including the Base Offense level, enhancements, credit for acceptance of responsibility, and conclusions that <u>the Adjusted Offense Level for Count 1 is 20</u> and <u>the Guideline sentence for Count 2 is two years *consecutive* to the sentence imposed on Count 1</u>. *See* PSIR ¶¶24–35.

ii. **Criminal History Category**

The Government adopts the PSIR's calculation of his criminal history and its conclusion that the <u>Defendant's Criminal History Category is II</u>.  PSIR ¶¶39–43.

iii. **Guidelines Range and Sentence**

The Sentencing Guidelines advise that the Defendant—with an Adjusted Offense Level of 20 and a Criminal History Category of II—receive a sentence of <u>61 to 70 months incarceration</u> (including the mandatory consecutive sentence of 24 months), <u>1 to 3 years supervised release</u>, and a <u>$15,000 to $150,000 fine</u>.  U.S.S.G. ch. 5, pt. A. and §§5D1.2(a)(2), 5E1.2(c)(3); PSIR ¶¶60, 66, 72.

III. **Government's Sentencing Recommendation**

Based on all of the information before the Court, the United States respectfully requests that the Court impose a sentence of imprisonment near the 70-month-ceiling of the Guideline range, a 3-year-term of supervised release, a Guideline fine, and the agreed-upon forfeiture and restitution.  This recommended sentence is sufficient, but not greater than necessary, to comply with the sentencing purposes set forth in 18 U.S.C. § 3553(a)(2).

### a. The Nature, Circumstances, and Seriousness of the Offense.

"During the COVID-19 pandemic, billions in unemployment relief funds were stolen by persons who fraudulently applied for pandemic-related unemployment benefits." *United States v. Gonzales*, 547 F. Supp. 3d 1083, 1138 (D.N.M. 2021).  In the three-year-period ending in March 2023, the New York State Department of Labor paid out $918,445,178 in <u>established</u> fraudulent payments for its pandemic unemployment and regular insurance programs. *See* Exhibit 1 at 2, 4.[2] In both categories of unemployment benefit programs, only one state has more established loss to fraudulent activity. *Id*.  This Defendant contributed to the pandemic of COVID fraud by conspiring with his girlfriend to steal funds that were meant for those who truly needed that safety net. Unemployment insurance funds could have lasted longer and helped more individuals with a true need had criminals—like Defendant—not exploited the system to get unwarranted benefits.  This is a very serious crime.

In addition to being serious, this is a long-running offense.  The offense conduct spanned 16 months.  The conspirators repeatedly re-certified the claims, providing ample opportunity for reflection on the harm they caused.  This was a calculated, prolonged effort to divert the funds forming the threads of the social safety net into the Defendant's coffers.  The Court should consider the extended nature of the crime when fashioning a sentence.

---

[2] Exhibit 1 to this memorandum is Appendix IV of the U.S. Government Accountability Office's September 2023 report entitled "UNEMPLOYMENT INSURANCE:  Estimated Amount of Fraud during Pandemic Likely Between $100 Billion on $135 Billion."  The entire report is available at <https://www.gao.gov/assets/gao-23-106696.pdf>.

    **b.   The History and Characteristics of the Defendant.**

The Defendant is a 32-year-old man facing his second felony fraud conviction. *See* PSIR ¶39. Although the Defendant's previous conviction was for Grand Larceny in the Third Degree for stealing more than $3,000, he was originally charged with Identity Theft in the Second Degree for assuming another person's identity and causing a financial loss greater than $500. *See* PSIR ¶39. His prior sentence has not dissuaded him from stealing others' identities for his personal gain.

The Defendant "recalled a good childhood" with a large immediate family. PSIR ¶¶47–48. He is in generally good physical, mental, and emotional health. *See* PSIR ¶¶51–52.

The Defendant has been in a romantic relationship with co-conspirator Clarke for 11 years, he has a five-year-old child with co-conspirator Clarke, and a seven-year-old child with another woman. PSIR ¶49. The Defendant and Clarke have a plan for childcare in the event they are both incarcerated. PSIR ¶49. The Court may wish to delay the execution of one of the conspirators' sentence so as to permit their child to have a parent caring for them. *See United States v. Alderson*, 2023 U.S. Dist. LEXIS 144349 at *1 (E.D. Mich. Aug. 17, 2023) (recounting a delayed surrender to the Bureau of Prisons (BOP) to secure childcare); *see also United States v. Apostolopoulos*, 2:20-CR-103 (E.D.N.Y.) Minute Entry dated February 16, 2022 (ordering the defendant-husband to surrender to BOP to serve an 18-month-sentence following the completion of the defendant-wife's 6-month-sentence); *United States v. Giudice*, 2:13-CR-495 (D.N.J.), Minute Order dated October 2, 2014 (ordering defendant-husband ordered to surrender to BOP to serve 41-month-sentence for conspiracy to commit mail and wire fraud upon the completion of coconspirator-wife's 15-month-sentence). If the Court elects to stagger the conspirators' terms of imprisonment,

the Government respectfully suggests that the Defendant's presumably-longer term be executed after the completion of co-conspirator Clarke's.

Finally, the Defendant is represented by retained counsel and has not provided a financial statement to probation. PSIR ¶58. "[E]xcept where a defendant establishes he is unable to pay," the "court shall impose a fine in all cases." U.S.S.G. §5E1.2(a). The Defendant has not established an inability to pay, so the Guidelines call upon the Court to impose a fine.

### c. Respect for the Law, Just Punishment, and Deterrence.

A term of imprisonment at the top end of the Guideline range of 61 to 70 months, a three-year-term of supervised release, a Guideline fine will promote respect for the law, provide just punishment, and further both specific deterrence to the Defendant and general deterrence to others. The Defendant defrauded the government out of $381,815. The amount is not *de minimis*. This is not Defendant's first felony conviction involving identity theft. His crime is one of greed, and the Court should punish him accordingly.

Furthermore, the Defendant did not provide the financial documentation to the United States Attorney's Office required by his plea agreement. *See* Exhibit 2. Defendant had an obligation to provide those documents within 10 days of request. *See* Plea Agreement ¶1(f) (ECF 4 at 2–3). The government made the request on December 19, 2023. Exhibit 2. The defendant's non-compliance with the request will likely frustrate the government's ability to meet its own obligation to collect restitution. *See United States v. Ekamen*, 383 F.3d 40 (2d Cir. 2004) (holding the government fits the definition of victim under the Mandatory Victims Restitution Act). More than eight months have elapsed since the initial request, and the Defendant has failed to provide the required documents. *See* Exhibit 2. The Court should take the Defendant's disregard of his obligations when fashioning a sentence.

6

### d. The need to reflect unwarranted disparities among defendants.

On December 20, 2023, this Court entered judgment against Kahleke Taylor ("Kahleke"), sentencing him to 27 months of imprisonment and 2 years of supervised release. 1:22-CR-46 (MAD) ("Kahleke Docket") ECF 123. When pleading guilty to Conspiracy to Commit Wire and Mail Fraud and four substantive counts of those offenses, Kahleke admitted to "us[ing] social media to solicit the means of identification of other people for use in his unemployment insurance fraud scheme." Kahleke Docket ECF 51 at 7. That fraud scheme involved Kahleke "applying for and obtaining unemployment insurance benefits in the names of other people, including benefits paid under federal programs promulgated in response to the COVID-19 pandemic."[3]  Kahleke Docket ECF 51 at 6–7. Between August 2020 and June 2021, Kahleke caused a $207,004 loss to the State of New York based on the claims of nine purported recipients. *Id*. at 6, 9. Khaleke's sentencing memorandum notes that the parties agree that the total offense level was 14, the Criminal History Category was III, and the advisory Guideline range was 21–27 months. Khaleke Docket ECF 119 at 1.

The Court should look to Khaleke as a similarly situated defendant for the purposes of determining that portion of Defendant's sentence related to Count 1. The Defendant caused a significantly higher loss amount than Khaleke – whereas Kahleke caused a $207,000 loss, the loss Defendant inflicted exceeded $380,000. While Khaleke's conspiracy lasted 10 months, the Defendant's went on for 16 months. Finally, Khaleke's conduct involved 9 claimants, the Defendant's involved at least 17. Although the Defendant is one Criminal History Category below

---

[3] Kahleke also pled guilty to Aggravated Identity Theft, but he was allowed to withdraw that plea prior to sentencing due to a change in the law. *See* Kahleke Docket ECF 122 and Text Minute Entry dated 12/18/2023; *see also Dubin v. United States*, 599 U.S. 110 (2023).

7

Khaleke, his conduct is more egregious thank Khaleke's in terms of (1) loss amount, (2) duration, and (3) scope. Khaleke's top-of-Guideline sentence warrants similar treatment for the Defendant. *See also United States v. Louma*, 2023 U.S. App. LEXIS 4123 at *13 (11th Cir. Feb. 22, 2023) (affirming a top-of-Guideline sentence for a Criminal History Category II defendant where the sentencing court noted "the 'incredible harm' inflicted by his 'elaborate plan' to steal numerous victim identities and defraud a COVID relief program").

## IV.     CONCLUSION

No single individual is responsible for the $900+ million of stolen unemployment funds from NYSDOL. The Defendant conspired to defrauded the State, which lost $381,815 as a result of the scheme. Like so many others, he took advantage of a program designed to quickly get money to those with a true need. This criminal activity collectively inflicted significant financial harm on the State of New York and society as a whole. Since financial gain motivates unemployment insurance fraud, the Court's sentence will send a message to others about the costs of such criminal activity; that message will be considered by future potential criminals in determining whether the costs of fraud outweigh the financial benefits. Accordingly, the Court should sentence the Defendant to a term of incarceration at the top end of the 61 to 70 month Guideline range; a three-year-term of supervised release; a Guideline fine; and a $200 special assessment; and the Court should order the agreed-upon restitution of $381,815 to the State of New York as and forfeiture of $315,723.[4]

---

[4] The United States reserves the right to respond to defense arguments raised for the first time after the filing of this memorandum. Similarly, if the Court is considering a *sua sponte* departure from the applicable Guidelines range on a ground not previously identified by the parties or in the PSIR, the parties are entitled to notice and an opportunity to respond. *See* Fed. R. Crim. P. 32(h), (i)(1)(c). Further, the United States respectfully requests that the Court provide the parties with any *ex parte* communications received by the Court in connection with sentencing, with the

Respectfully submitted this 3rd Day of September, 2024.

                        CARLA B. FREEDMAN
                        United States Attorney

By:   */s/ Jonathan S. Reiner*
       Jonathan S. Reiner
       Assistant United States Attorney
       Bar Roll No. 702645

### CERTIFICATE OF SERVICE

I hereby certify on September 3, 2024, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to counsel for the Defendant.

       */s/ Jonathan S. Reiner*
       Jonathan S. Reiner
       Assistant United States Attorney
       Bar Roll No. 702645

---

exception of the confidential sentencing recommendations submitted by the United States Probation Office.